**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| RIVER CHIROPRACTIC AND WELLNESS CENTER, LLC, | )  CASE NO. 1:20-cv-00688 |
| | )  JUDGE DONALD C. NUGENT |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | )  **MOTION FOR CLASS** |
| BANKROLL CAPITAL, INC. | )  **CERTIFICATION** |
| | ) |
| Defendant. | ) |

NOW COMES Plaintiff, River Chiropractic and Wellness Center, LLC ("River Chiropractic"), by and through counsel, and brings this action to secure redress from Defendant Bankroll Capital, Inc.'s ("Bankroll") practice of sending unsolicited promotional faxes without consent of the recipient in violation of the Telephone Consumer Protection Act ("TCPA"), U.S.C. § 227.  Pursuant to Fed.R.Civ.R. 23, Plaintiff hereby moves this Court for an Order certifying the proposed class as outlined in its Class Action Complaint.  (Complaint, ECF Doc #: 1).

I.      **INTRODUCTION**

"The plain language of the [TCPA] prohibits the "use [of] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." 47 U.S.C. § 227(b)(1)(C)." *Am. Copper & Brass, Inc. v. Lake City Indus. Prod., Inc.,* 757 F.3d 540, 544 (6th Cir. 2014).

"[I]n enacting the TCPA, Congress noted that such fax advertising 'is problematic' because it 'shifts some of the costs of advertising from the sender to the recipient' and 'occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while

processing and printing the junk fax.' H.R. Rep. 102–317 at 10 (1991)." *Imhoff Inv., L.L.C. v. Alfoccino, Inc.,* 792 F.3d 627, 631 (6th Cir. 2015).

"Unsolicited fax advertisements impose costs on all recipients, irrespective of ownership and the cost of paper and ink, because such advertisements waste the recipients' time and impede the free flow of commerce." *Id.*, p. 632.

Plaintiff River Chiropractic alleges that Bankroll routinely sends unsolicited marketing faxes to individuals and businesses without their consent. (Complaint, ¶¶ 7, 11-18 & Exhibit 1 thereto). As alleged in the Complaint, on knowledge and belief, the number of such facsimiles sent is in the hundreds if not thousands, and the recipients are readily identifiable from Bankroll's records. (Complaint, ¶ 21).

The TCPA "provides a private right of action, permitting plaintiffs to seek (1) to enjoin a violation of the Act; (2) to recover for actual monetary loss from such a violation or to receive $500, whichever is greater; or (3) both (1) and (2). 47 U.S.C. § 227(b)(3). *Imhoff Inv., L.L.C. v. Alfoccino, Inc.,* 792 F.3d 627, 631 (6th Cir. 2015). Further, the TCPA permits a court to treble the damages, if a defendant sent the faxes knowingly to parties without their consent. 47 U.S.C.A. § 227 (5)(C). Accordingly, Plaintiff seeks both injunctive relief and statutory damages.

Plaintiff hereby respectfully moves the Court for an Order certifying a putative class defined as follows, or such other class or subclasses as may be appropriate:

> All persons in the United States who received a facsimile from or on behalf of Defendant, and who had no ongoing business relationship with Defendant and had not given consent to receive facsimiles from Defendant or where the facsimiles did not provide opt out language, within the six years prior to the filing of the Complaint, until this Class is certified.

## II.    FACTS

Bankroll markets and sells business loans nationally in the United States. (Complaint, ¶¶ 3-4).  To promote its products, Bankroll sends marketing facsimiles to medical offices.

On October 24, 2018, Bankroll sent a marketing facsimile (the "Fax") to River Chiropractic.   (Complaint, ¶¶ 3-8; Exhibit 1 thereto).   River Chiropractic had no business relationship with Bankroll and had not given Bankroll its number or consented to receiving the Fax.  (Complaint, ¶ 16).  Further, the Fax did not have an opt-out notice.  (*Id*., Exhibit 1, thereto).  Bankroll's action of sending this unsolicited facsimile caused both monetary and nonmonetary damage to River Chiropractic, including the costs of paper, ink and toner, employee time to review the Fax, invasion of privacy, nuisance, stress, aggravation, interruption of work, trespass to chattel by interfering with the office facsimile used to aid patients, and the violation of River Chiropractic's rights under the TCPA.  (*Id*., ¶ 19).

## III.    LAW AND ANALYSIS

### A.  Class Action Requirements

Fed. R. Civ. Pro. 23 governs class-action litigation in federal court.  To be certified under Fed. R. Civ. Pro. 23, a court must find by rigorous analysis that the four explicit criteria of Rule 23(a) exist (numerosity, commonality, typicality, and adequate representation), as well as an implied element of Rule 23(a) (ascertainability or identifiability), and that one of three criteria set forth in Rule 23(b) exist:

1. *Ascertainability* – the class definition must be sufficiently definite so that it is administratively feasible for the court to determine class membership
2. *Numerosity* – the class is so large that joinder is impracticable
3. *Commonality* – questions of law or fact common to the class
4. *Typicality* – the claims or defenses of the named parties are typical of the class
5. *Adequacy* – the class representatives will fairly and adequately protect the class
6. One of the ***Rule 23(b)*** requirements

See *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 537-545 (6th Cir. 2012); *Macy v. GS Services Limited Partnership*, 897 F.3d 747, 761-762 (6th Cir. 2018); *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.23d 254, 278-279 (6th Cir. 2018).

Regarding these six criteria, "**When evaluating whether to certify the class, the district court must take the allegations of plaintiffs as true**, with any doubts resolved in favor of certification." *Trollinger v. Tyson Foods, Inc.,* 2006 WL 2924938, *4 (E.D. Tenn. 2006) (emphasis added), citing *Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Co.*, 29 F.Supp.2d 825, 830 (N.D.Ohio 1998); see also *Thompson v. Community Ins. Co*., 213 F.R.D. 284, 291 (S.D. Ohio 2002) ("The district court must take the allegations of plaintiffs as true.").

Furthermore, this Court has stated that although "the Court must undertake a 'rigorous analysis' in certifying a class […]. 'any doubts as to certification should be resolved in the favor of Plaintiffs.'" *Meznarich v. Morgan Waldron Ins. Management, LLC*, 2011 WL 4634021, *8 (N.D. Ohio 2011), citing *Thompson*, supra; see also *Gasperoni v. Metabolife, Intern. Inc.,* 2000 WL 33365948, *8 (E.D. Mich. 2000) ("any doubts concerning the propriety of a class certification should be resolved in favor of upholding the class").

In making the determination regarding certification, "Courts should consider the merits insofar as 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *Humphrey v. Stored Value Cards*, 2018 WL 6011052, * (N.D. Ohio 2018), citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

### B. <u>Ascertainability</u>

As cited by this Court, ascertainability means that "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Humphrey, supra*, * 5, quoting *Young, supra*, 693 F.3d at 537-538, *citing* 5 James W. Moore et al., Moore's Federal Practice § 23.21[1] (Matthew Bender 3d ed. 1997).

Every class action requires some determination of whether any particular individual, any potential class member, is truly in or out of the class. This implied requirement of certification simply means that "the class is objectively defined." *Id.*; see also *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 71-73 (1998) (Regarding Ohio's equivalent Civ.R. 23, the Ohio Supreme Court held that a definition is sufficiently definite when permits identification of class members with "a reasonable effort" and "the court need only look to the actions or practices of [defendant] to determine whether an individual is a member of [the class].").

In the case at bar, Plaintiff proposes a class for certification defined as follows, or such other classes or subclasses as may be appropriate:

> All persons in the United States (1) who received a facsimile from or on behalf of Defendant offering loans or lines of credit, (2) who had no ongoing business relationship with Defendant and had not given consent to receive facsimiles from defendant or where the facsimiles did not provide opt out language, (3) within the six years prior to the filing of the Complaint until the class is certified.

Preliminarily, Plaintiff notes that this proposed definition is substantially similar to the class definitions recently approved by Judge Loi in *Todd S. Elwert, Inc., DC v. Alliance Heathcare Services, Inc.* 2018 WL 4539287, *1 (N.D.Oh.2018). Indeed, this class definition is limited in number and by time. Moreover, its specific and clear, such that the parties and the Court can readily determine from Defendants' practices, its records, and the records of any fax service provider, whether a particular individual is a member of each class.

## C. Numerosity

To be certified, a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. Pro. 23(a)(1).

In practice, evidence of more than forty potential class members satisfies this numerosity requirement. *Humphrey,* *3, citing *Pund v. City of Bedford, Ohio*, 2017 WL 3219710 (N.D. Ohio

2017), *quoting* Newberg on Class Actions § 3:12 (5th ed. 2017); see also *Todd S. Elwert, supra* ("Elwert's complaint alleges that the defendants sent the Fax Ad and other unsolicited faxes to more than forty other persons").

Here, River Chiropractic alleges that Bankroll successfully transmitted approximately hundreds, if not thousands, of unsolicited facsimiles.  (Complaint, ⁋ 21).  Therefore, numerosity is handily met.

### D.  Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."

Commonality is satisfied where a common contention is capable of class wide resolution, meaning "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Humphrey, supra, *3,* citing *Walmart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351 (2013) & *In re. Whirlpool Corp. Front-Load Washer Prod. Liab. Litig*, 722 F.3d 838, 853 (6th Cir. 2013). Or, can a class-wide proceeding "generate common answers apt to drive the resolution of the litigation." *Id.*

The commonality test is not a demanding requirement. *Id.*, see also *Sprague v. General Motors Corporation*, 133 F. 3d 388, 397 (6th Cir. 1998).

To establish commonality, the class needs to share only a *single* common issue.  *Jammal v. American Family Ins. Group,* 2016 W.L. 815576 (N.D. Ohio 2016); *Edwards v. McCormick*, 196 F.R.D. 487 (S.D. Ohio 2000); *Mann v. Acclaim*, 232 F.R.D. 278 (S.D. Ohio 2003).  The commonality test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *Newberg on Class Actions,* § 3.10; *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996).

Here, River Chiropractic's "common contention" is that Bankroll violated the TCPA by sending unauthorized marketing facsimiles to class members. Determining the common factual

and legal issues for this contention will "in one stroke" resolve the issue central to each class member's claim and provide a "resolution for the litigation." Therefore, the commonality element is met.

### E. Typicality

Typicality exists where the lead plaintiffs' claims "arise from the same … practice or course of conduct that gives rise to the claims of the other class members, and if his or her claims are based on the same legal theory." *Beatti v. CenturyTel, Inc*. 511 F.3d 554, 561 (6th Cir. 2007); see also *American Medical Systems*, *supra*, at 1082, quoting *Herbert B. Newberg & Alba Conte*, *Newberg on Class Actions*, *4th Ed.,* § 3.13, pp. 3-76 (3d ed. 1992). If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality. *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir.2001); *Newberg* § 3.13, pp. 326-327.

So explained, typicality tends to merge with commonality. *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 158, n. 13, 102 S. Ct. 2364,72 L. Ed. 2d 740, (1982).

In the case at bar, River Chiropractic's claims are not only typical but identical to the claims of other class members. River Chiropractic's claims arise from what it alleges to be a common practice and conduct of Defendant, the sending of unsolicited marketing facsimiles. River Chiropractic claims that as part of its marketing campaigns Bankroll sent facsimiles to businesses with whom Bankroll had no prior business relationship and had not consented to the facsimiles. River Chiropractic asserts that such conduct violated the TCPA. Based on Bankroll's conduct and practice during this campaign, River Chiropractic asserts a common theory of liability for all class members against Bankroll. Therefore, the typicality requirement is met.

### F. Adequacy of Representation

Fed. R. Civ. Pro. 23(a)(4) provides that "the representative parties will fairly and adequately protect the interests of the class." This ***adequacy*** requirement necessitates that a class

representative have interests in common with the class and that the representatives appear willing to vigorously prosecute the class interests. *Humphrey, supra*, \*4-5. This element also "serves to uncover conflicts" between the class representatives and the class. *Young, supra*, 683 F.3d at 543. Adequacy applies to both lead plaintiffs and their counsel. *Humphrey, supra*, \*4-5.

Regarding class counsel, Attorney Ronald Frederick and the firm of Frederick & Berler LLC, who are directing this litigation, have extensive consumer and class action experience. They have successfully litigated numerous class action cases from inception to conclusion, including, but not limited to, the following:

> *Ford Motor Credit Co. v. Shaun E. Lowe*, Cleveland Municipal Court Case No. 99 CVF 15806;
>
> *Phillips v. Andy Buick et. al.*, Lake County Common Pleas Case No. 02CV001128;
>
> *Setliff, et al v. Morris Pontiac*, et al, Lorain County Common Pleas, Case No. 02-CV-131974;
>
> *Thompson v. Tri-County Kia*, Lorain County Common Pleas, Case No. 02-CV-132392, appeal dismissed;
>
> *Bartok v. Serpentini Group*, Cuyahoga County Common Pleas, Case Number 02 CV 479965;
>
> *Willis v. T.E. Clarke Motors, Inc.,* Cuyahoga County Common Pleas Court Case No. 479655;
>
> *North Shore Auto Financing, Inc. v. Block*, 2003 WL 21714583, 2003-Ohio-3964, (Ohio App. 8 Dist., Jul 24, 2003) jurisdictional motion denied, 100 Ohio St.3d 1531, 800 N.E.2d 47;
>
> *Anderson v. Asset Acceptance Corp.*, 1:03CV97 (N.D. Ohio);
>
> *Washington v. Spitzer Management, Inc.*, 2003 WL 1759617, 2003-Ohio-1735 (8th Dist. April 3, 2003) jurisdictional motion denied, 99 Ohio.St.3d. 1543, 795 N.E.2d 682, 2003-Ohio-4671 (2003);
>
> *Huntington National Bank v. Bessie Malacky*, Cuyahoga County Common Pleas, 03 CV 491420;

*Cummings, et al v. H&R Block*, Circuit Court of Kanawha County, West Virginia, Case No. 03-C-134;

*First Merit v. Clauge*, Cleveland Municipal Court, Case No. 03 CVF 27720;

*CNAC v. Claudio*, Lorain County Common Pleas, 04 CV 137406;

*Northcoast Financial Services v. Webster*, Cleveland Municipal Court, 2004 CVF 18651;

*Nicholas Financial v. Sanborn*, Cleveland Municipal Court, Case No. 2004 CVI 6969;

*Tidewater Financial v. Wade, et al.*, Cuyahoga County Common Pleas, Case No. 05-CV-562559;

*Burns v. Spitzer Management*, Cuyahoga County Court of Common Pleas, Case No. 06 CV 606666;

*Brailsford v. Jackson Hewitt*, Case No. C 06-00700 CW (N.D. Cal);

*Asset Acceptance v. Bediant*, et al, Lorain County Common Pleas, Case No. 07-CV-1525;

*Broadway Finance Co. v. Lakettia McCutchen*, et al, Cleveland Municipal Court Case No. 07 CVF 09855;

*Miguel Allende v. United Acceptance, Inc*., Lorain County Common Pleas, Case No. 08 CV 158791;

*Central Ohio Credit Corp. v. Conway*, Richland County Common Pleas, Case No. 08 CV 2000;

*Hall v. Capital One Auto Finance, Inc*., Northern District Ohio, Case No.  1:08-cv-01181;

*Shagawat v. Northcoast Cycles, LLC*, Cuyahoga County Court of Common Pleas, Case No. 09-CV-697047;

*CES Credit Union v. Jacob D. Fulton*, Richland County Court of Common Pleas, Case No. 12 CV 0877;

*White, et al. v. Wells Fargo Bank, N.A.*, Northern District Ohio, Case No. 12 CV 00943;

*American General Finance v Opal Griffin, et al.*, Cuyahoga County Court of
Common Pleas, Case No. 09 CV 685562;

*Caffy Steen, et al. vs. Guardian Financial Services Company*, Cuyahoga County
Court of Common Pleas, Case No. 2014-CV-0548;

*William Hodge vs. Chaparral, Inc. dba Northcoast Financial Services*, Lucas
County Court of Common Pleas, Case No. G4801-CI-0201502298-000;

*Southern Auto Finance Company, LLC vs. Tracey Terry, et al.*, Cuyahoga County
Court of Common Pleas, Case No. CV-16-864734;

*Martin Baker vs. Levin Furniture (Sam Levin, Inc.)*, Cuyahoga County Court of
Common Pleas, Case No. CV-11-754814;

*Rose Brock, et al. vs Directions Credit Union, Inc.,* Lucas County Court of
Common Pleas, Case No. G4801-CI-0201603461-000

Accordingly, no issue arises on this element.

Regarding the adequacy of a class representative, River Chiropractic's interests are
common to the class as described herein. River Chiropractic's complaint evidences a desire to
prosecute the class interests. It has no relationship with Defendant, except as the lead Plaintiff in
this action. Further, there is nothing in the record to suggest that River Chiropractic's interests'
conflict at all with the class. River Chiropractic's interests are antagonistic to those of Bankroll,
allowing it to vigorously pursue the claims of the class. Consequently, River Chiropractic will be
an adequate class representative.

Based on the foregoing, the adequacy requirement is satisfied both with respect to River
Chiropractic and its counsel.

## Fed. R. Civ. Pro. 23(B) Options

In addition to the requirements for certification under Fed. R. Civ. Pro. 23(a), the Court
must find that one of three requirements under Fed. R. Civ. Pro. 23(b) exist to certify a class:

A class action may be maintained if Rule 23(a) is satisfied and if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

In essence, Rule 23(b)(2) is for injunctive and declaratory relief and Rule 23(b)(3) is for damages, and a court may certify a class under both rules. *Binder v. Cuyahoga County*, 2019-Ohio-1236, ¶¶ 87, 126, 128 (8th Dist.). Here, certification under both Fed. R. Civ. Pro. 23(B)(2) and (3) is proper, because Plaintiff seeks to enjoin violations of the TCPA as specifically provided thereunder, as well as redress for class member. Indeed, common issues *predominate* over

individual issues and proceeding as a class action is the *superior* method of adjudication.  *Jammal, supra*, 2016 WL 815576, *6; *Humphrey, supra,* 2018 WL 6011052, *6-8.

### 1.  **Rule 23(b)(2)**

With respect to Civ. R. 23(B)(2), this class action lawsuit relates to Defendant's typical and customary business practices of unlawfully sending marketing facsimiles.  Moreover, the TCPA explicitly permits actions to enjoin violations of the act, and Plaintiffs seeks such an injunction in Plaintiff's Prayer for Relief.  47 U.S.C. § 227(b)(3).  Equitable relief is also essential to prevent further violations of the act, as Defendant's violations of the TCPA has been a business choice and without equitable relief Defendant will continue its unlawful conduct.  Thus, certification is proper and necessary under Civ.R. 23(B)(2).

### 2.  <u>**Rule 23(b)(3)**</u>

Certification is proper under Rule 23(b)(3), if the predominance and superiority elements are met.

#### a.  *Predominance*

Class claims are predominant when they are "sufficiently cohesive to warrant adjudication by representation."  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Tyson Foods, Inc. v. Bouaphekeo*, 136 S. Ct. 1036, 1045 (2016).  This requirement is met where the common issues "are more prevalent or important than the non-common, aggregation defeating, individual issue."  *Id*.  Predominance does not require finding that individual issues do not exist, but a court must weigh the relevant importance of individual and common issues.  *Jammal*, *supra*, 2016 WL 815576, *6, citing *Rockey v. Courtesy Motors, Inc*., 199 F.R.D. 578, 588 (W.D. Mich. 2001).

In the case at bar, there are no significant individual issues.  All issues relevant to River Chiropractic's case and the class are the same.  All issues revolve around what River Chiropractic

alleges are a common practice and standardized conduct engaged in by Bankroll during its marketing campaign. Bankroll sent facsimiles to recipients who Bankroll had no prior business relationship with, did not receive consent from to send the facsimile, or did not provide opt out language in the facsimile. The theory of liability based on Bankroll's conduct is equally applicable to all class members. Hence, predominance exists.

### b. Superiority

Superiority requires consideration of the four factors listed in Fed. R. Civ. Pro. 23(B)(3): (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Humphrey*, *6. In this regard, proceeding as a class action is generally considered superior where "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem, supra*, p. 617; see also *Hamilton, supra,* pp. 79-80 (the Ohio Supreme Court has held similarly that a primary purpose Rule 23(B)(3) is to enable "numerous persons who have small claims that might not be worth litigating in individual actions to combine their resources and bring an action to vindicate their collective rights.").

Additionally, the Sixth Circuit has held that cases arising from an alleged "course of wrongful conduct" are particularly well-suited for class certification. *Young, supra*, 683 F.3d at 545, quoting *Powers v. Hamilton County Pub. Defender Com'n*, 501 F.3d 619 (6th Cir. 2007); see also *Pavlov v. Continental Casualty Co*., 2009 WL 10689011, *6 (N.D. Ohio 2009).

In this regard, Judge Loi recently wrote:

> "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are

'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992). Likewise, the public interest is served by enforcing the JFPA. Arguably, class actions are the only effective means to enforcing the JFPA because individual actions are unlikely. Therefore, the public interest factor weighs in favor of approving the settlement agreement.

*Todd S. Elwert, supra*, * 3.

Applying these criteria here, individual class members would have little interest in pursuing separate actions, because of the small amount of potential damages available to each class member for violations.  Moreover, considering the cost and these financial barriers to any law, class members are either resigned to doing nothing, or perceive that their damages are in amounts, that, when taken individually, are too small to justify the expense of separate lawsuits.  However, if their damages are aggregated, the amount at issue makes litigation feasible.  These economic realities make proceeding as a class action the superior mechanism.

Moving to the second factor, Plaintiff knows of no pending competing litigation.

Regarding the third prong, the desirability of concentrating litigation in a single forum, the Ohio Supreme Court and federal courts have observed that a "class action is the preferable method for dealing with… a party's recurring malfeasance, because the ability to avoid duplicating a court's time, effort, and resources is an important and relevant consideration."  *In Re Consol. Mort. Satisfaction Case,* 97 Ohio St.3d 465, 470 (2002); see also e.g. *Upshaw v. Georgia (GA) Catalog Sales, Inc*., 206 F.R.D. 694, 701-701 (M.D. Georgia 2002); *Castano v. American Tobacco Co*., 84 F.3d 734, 740 (5th Cir. 1996).  Based on this rationale, the third element is met:  This action is designed to correct Bankroll's malfeasance and concentrating litigation would avoid duplicative use of the Court's time dealing with the same legal violation.

14

Finally, given the straight-forward nature of the class claims at hand, there are no apparent difficulties encountered in the management of this class action beyond those typical of any action. Rather, because this case revolves around specific and extremely limited violations of the law, no class management problems are foreseeable or likely.

For these reasons' superiority exists.

## V.   <u>CONCLUSION</u>

WHEREFORE, River Chiropractic respectfully requests that this Honorable Court certify the class as defined above for class action treatment in accordance with Civ.R. 23 and applicable case law.

Respectfully submitted,

<u>s/ Ronald I. Frederick</u>
Ronald I. Frederick (#0063609)
Michael L. Berler (#0085728)
Michael L. Fine (#0077131)
Frederick & Berler LLC
767 E. 185th Street
Cleveland, OH 44119
(216) 502-1055 (phone)
(216) 781-1749 (fax)
ronf@ClevelandConsumerLaw.com
mikeb@ClevelandConsumerLaw.com
michaelf@ClevelandConsumerLaw.com
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The foregoing was filed electronically this 4th day of December 2020 and will be served by

operation of the Court's ECF system.  Additionally, a copy of the foregoing was sent via regular

U.S. Mail, to the following:

> Bankroll Capital, Inc.
> c/o Narin Charan, CEO
> 500 Technology Drive, Suite 350
> Irvine, CA 92618
>
> Narin Charan, CEO of Bankroll Capital, Inc.
> 121 Turquoise
> Irvine, CA 92620

> *s/ Ronald I. Frederick*
> Ronald I. Frederick (#0063609)
> Frederick & Berler LLC
> *One of the Attorneys for Plaintiff*