# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| RIVER CHIROPRACTIC AND WELLNESS CENTER, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>BANKROLL CAPITAL, INC.,<br><br>    Defendant. | ) CASE NO 1:20-CV-00688-DCN<br>)<br>) JUDGE DONALD C. NUGENT<br>)<br>) **DEFENDANT BANKROLL CAPITAL,**<br>) **INC.'S MOTION TO DECERTIFY**<br>) **CLASS**<br>)<br>)<br>)<br>) |

Pursuant to Federal Rule of Civil Procedure 23(c), Defendant Bankroll Capital, Inc. ("**Bankroll**") moves the Court to decertify the class. Plaintiff's prior Motion for Class Certification was based solely on the fact that its class allegations were, at that time, deemed admitted owing to Bankroll's prior default. As the default has been set aside, those allegations are now denied, and now that discovery is closed, Plaintiff lacks sufficient evidence to warrant ongoing certification as to numerosity, Fed. R. Civ. P. 23(a)(1), in addition to the other elements for class certification.

A Memorandum in Support is attached.

Respectfully submitted,

/s/ David M. Krueger
DAVID M. KRUEGER (0085072)
JOHN N. DAGON (0098128)
**BENESCH, FRIEDLANDER, COPLAN &**
  **ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:  216.363.4500
Email:  dkrueger@beneschlaw.com
          jdagon@beneschlaw.com

*Attorneys for Defendant Bankroll Capital, Inc.*

15323251 v1

**MEMORANDUM IN SUPPORT**

**I.     BACKGROUND & PROCEDURAL POSTURE**

     **A.     PLAINTIFF'S COMPLAINT AND CLASS DEFINITION**

On April 1, 2020, Plaintiff filed its Complaint against Bankroll, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("**TCPA**"). (Compl., Doc. 1.) Specifically, as to Plaintiff's individual claim, Plaintiff alleged that on July 24, 2018, it received a one-page unsolicited facsimile, allegedly from Bankroll (the "**Purported Fax**"). (Compl. at ¶¶ 11–12). The Purported Fax offered Plaintiff a $250,000 line of credit from a business named Ohio Business Loans and contained a call-back number of 440-965-6238 for a person named Joshua. (*Id.* at ¶¶ 12–13, citing Exhibit A thereto). Plaintiff alleged that this fax advertisement purportedly was sent by Bankroll and violated the TCPA because it was unsolicited and failed to provide opt-out language required by the TCPA. (*Id.* ¶¶ 16-17.)

Plaintiff sought to represent a proposed nationwide class, defined as:

> All person in the United States (1) who received a facsimile from or on behalf of Defendant offering loans or lines of credit, (2) who had no ongoing business relationship with Defendant and had not given consent to receive facsimiles from defendant or where the facsimiles did not provide opt out language, (3) within the six years prior to the filing of the Complaint until the class is certified.

(Compl. ¶ 20.)

     **B.     PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND PRIOR DEFAULT JUDGEMENT**

While the Court previously certified a class in this matter, it was based on the fact that, at the time, Bankroll was is in default in this matter and Bankroll did not oppose. (*See* Docs. 12, 13, 17, 18.) Thus, in moving for class certification, Plaintiff's allegations, whether regarding numerosity or otherwise, were deemed true. (*See* Doc. 13 at 6.)

1

On April 2, 2021, the Court set aside the default judgment and Bankroll filed its Answer denying Plaintiff's allegations, and specifically denying that it sent the faxes and that the elements for class certification were met. (Doc. 24; Doc. 25.) Since then, the parties have successfully completed discovery, and discovery closed on December 30, 2021. (*See* Docs. 27, 28, 31, and Order [non-document] of Nov. 2, 2021.)

With the completion of discovery, Bankroll respectfully moves for an order decertifying the class. When Plaintiff moved for class certification, its allegations regarding numerosity, and other Rule 23 elements, were taken as true simply by virtue of the fact that Bankroll had not yet appeared to deny them. Now that those allegations are denied, and with the closure of discovery, Plaintiff lacks any evidence to support ongoing class certification, warranting decertification.

    **C.**    **FACTS**

    **(i)**    **Plaintiff's Purported Fax**

Plaintiff is the subscriber to telephone number 440-409-0910 (the "**x0910 Number**"), the number at which Plaintiff allegedly received the fax at issue in this case. (Pl.'s Rule 30(b)(6) Dep., pp. 17:20-23, 18:17-19:7, 29:1-19, Dec. 9, 2021, attached as "**Exhibit 1**"); (*see also* Pl.'s Interrogatory Resp. No. 5, attached as "**Exhibit 2**.")

On July 24, 2018, Plaintiff alleges it received the Purported Fax on its x0910 Number.

15323251 v1



(*See* Ex. 1 pg. 17:4-19, citing above Purported Fax, attached as "**Exhibit 3**" pg. 1.)

The Purported Fax states it is from Ohio Business Loans, and provides a call back number, with a local area code, of 440-965-6238 for a person named "Joshua." (Ex. 1 pg. 31:3-16); (Ex. 3.) The Purported Fax does not mention Bankroll anywhere. (Ex. 1 pg. 38:7-19); (Ex. 3.) Plaintiff did not call the call-back number listed on the fax and does not know if anyone else from her office ever called that number. (Ex. 1 pp. 39:7-23, 46:17-24.)

Plaintiff admits that when it receives faxes, the faxes contain a "header" showing the Caller ID of the sender and displaying the date and time of transmission. (Ex. 1 pg. 34:17-25.) The Purported Fax does not have any such information. (Ex. 3.) Plaintiff does not know why the version of the Purported Fax it produced does not have that information, and also does not know if the original Purported Fax had that information. (Ex. 1 pg. 35:1-7, 50:15-22.) Plaintiff does not know what the Caller ID or transmission number was for the Purported Fax. (Ex. 1 pg. 30:16-18.)

3

Despite alleging that the Purported Fax was sent to it on July 24, 2018, Plaintiff admits that its phone records do not show any fax transmission to it on that date (from Bankroll or anyone else). (Ex. 1 pp. 51:6-52:21, discussing Ex. 3 pp. 3-5.) Bankroll also pursued specific discovery requests seeking evidence of the date, time, sender, and transmission number of the Purported Fax:

> 5. For the telephone number at which You received the Purported Fax as identified in Paragraph 11 of the Complaint, identify the telephone facsimile number, the subscriber to that number, the telephone facsimile carrier or provider for that number, and the date when You procured that number.
>
> **RESPONSE:** See attached records for (440) 409-0910
>
> …
>
> 7. Identify the telephone facsimile number from the Purported Fax was allegedly sent.
>
> **RESPONSE:** See attached records

(*See* Ex. 2.)

Ultimately, however, Plaintiff admits that its records do not show any fax from Bankroll:

> Q. But the records we were just looking at a moment ago in Exhibit 3 don't show any fax or fax from Bankroll, does it?
>
> …
>
> A. Yeah, I can't -- I can't answer that. I don't go through and call the numbers off of my phone bill.
>
> Q. If that's the case, why does your response say "see attached records"? So I asked you to identify the fax number from which you claim Bankroll sent the fax, and you, River Chiropractic, instructed me to see attached records.
>
> A. Okay.
>
> Q. So I'm asking you, show me where in the attached records I can find that information. Can you show me in the attached records where I can find that information?
>
> A. No.

4

(Ex. 1 pp. 54:7-55:2.)

Ultimately, the Purported Fax does not mention Bankroll or contain any indicia in any way of being associated with Bankroll. Moreover, the Purported Fax contains no indicia of being a bona fide fax and there is no evidence that anyone sent Plaintiff a fax (let alone the Purported Fax) on July 24, 2018, as Plaintiff ultimately conceded.

### (ii) Bankroll Did Not Send the Purported Fax

Bankroll did not send the Purported Fax. (*See* Decl. of Narin Charan, attached as "**Exhibit 4**.") To start, Bankroll was not even in business on July 24, 2018, and did not begin to operate as a business until September of 2018. (*Id.* ¶¶ 2-5.)

Bankroll has never done business as, or been affiliated with any entity doing business as, "Ohio Business Loans," does not have any employees named Joshua, and has no affiliation with, and has never used, the call-back number listed on the Purported Fax. (*Id.* ¶¶ 6-11.) Bankroll has never sent any fax to Plaintiff, and has never sent anything like the Purported Fax to Plaintiff or anyone else. (*Id.* ¶¶ 12-15.) In the few times that Bankroll has ever sent a fax since its inception (about eight times in total), the faxes were either blank applications sent in response to a customer inquiry or were faxes regarding personal matters of Bankroll employees. (*Id.* ¶ 16.)

## II. LAW AND ARGUMENT

### A. LEGAL STANDARD FOR CLASS CERTIFICATION

The "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation omitted). To obtain class certification, Plaintiff must show that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect

5

the interests of the class.  Fed. R. Civ. P. 23(a); *e.g.*, *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013).

"In addition to fulfilling the four prerequisites of Rule 23(a), the proposed class must also meet at least one of the three requirements listed in Rule 23(b), " under Rules 23(b)(1), (b)(2), or (b)(3). *Id.*; Fed. R. Civ. P. 23(b). The Court must conduct a "rigorous analysis" of whether the Rule 23 requirements are met. *Grubb v. Nucor Steel Marion, Inc.*, No. 3:14-CV-158, 2015 U.S. Dist. LEXIS 111683, *2 (N.D. Ohio Aug. 24, 2015). That rigorous analysis "[f]requently . . . will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 564 U.S. at 351.

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there [is] *in fact*" evidence to satisfy each requirement of Rule 23(a), including that there are "sufficiently numerous parties." *Dukes*, 564 U.S. at 350 (emphasis in original). To satisfy this standard, Plaintiff "must 'satisfy through evidentiary proof'" the requirements of Rule 23. *Grubb*, *supra.*, *quoting Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

      **B.**      **STANDARD FOR DECERTIFICATION AND BURDEN OF PROOF**

"After a class is certified, the court has a continuing duty to ensure that the requirements of Rule 23 remain satisfied as the case progresses." *Chesner v. Stewart Title Guar. Co.*, No. 1:06-CV-00476, 2009 U.S. Dist. LEXIS 22453, *37 (N.D. Ohio Jan. 9, 2009), *citing* Fed. R. Civ. P. 23(c)(1)(C). "[A] court's duty to assess the propriety of class certification is ongoing, and a court must be prepared under Rule 23(c) to alter or amend the class certification if necessary." *Powell v. Tosh*, No. 5:09-CV-00121, 2013 U.S. Dist. LEXIS 120448, *10-11 (W.D. Ky. Aug. 2, 2013) (collecting cases and granting motion to decertify).

6

While Bankroll is moving to decertify, it is not incumbent upon Bankroll to produce evidence supporting decertification. Rather, the burden of proof rests with Plaintiff, who must demonstrate that continuing class certification remains proper. *See, e.g.*, *Randleman v. Fid. Nat'l Title Ins. Co.*, 264 F.R.D. 298, 301 (N.D. Ohio 2009), *aff'd* 646 F.3d 347 (6th Cir. 2011).

### C. THRESHOLD MATTER: THE CERTIFIED CLASS IS AN IMPERMISSIBLE FAIL-SAFE CLASS

Even before addressing the requirement of Rule 23, Plaintiff's class definition fails as a threshold matter. Specifically, by defining the class as only those who "had not given consent to receive" faxes, (Compl. ¶ 20), the class definition is an impermissible fail-safe class because class membership is ultimately dependent on the merits. *See, e.g.*, *Sauter v. CVS Pharmacy*, No. 13-CV-846, 2014 U.S. Dist. LEXIS 63122, *23-25 (S.D. Ohio May 7, 2014) (holding that a proposed TCPA class definition that only includes those persons who did not give "prior express consent" is the very "definition of prohibited fail-sale class"), *citing Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347 (6th Cir. 2011).

### D. THE RULE 23(A) REQUIREMENTS ARE NOT SATISFIED

#### (i) Rule 23(a)(1): Decertification is warranted as Plaintiff has no evidence to satisfy numerosity.

A class may only be certified if "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). In establishing that a class is sufficiently numerous there is no strict numerical test, but courts have generally held that a class of 40 or more persons meets the numerosity requirement. *See, e.g.*, *Dillow v. Home Care Network, Inc.*, No. 1:16-cv-612, 2017 U.S. Dist. LEXIS 85788, *6 (S.D. Ohio June 5, 2017).

To meet this burden for class certification, "Plaintiffs must demonstrate the existence of the numbers of persons" in the proposed class, and "[t]he Court cannot rely on speculation or conclusory allegations of Plaintiffs." *Turner v. Grant County Det. Ctr.*, No. 05-148, 2008 U.S.

7

Dist. LEXIS 24210, *39, *45 (E.D. Ky. March 26, 2008) (denying class certification when the plaintiff failed to produce evidence sufficient to prove numerosity).

Here, even assuming that Bankroll sent the Purported Fax to Plaintiff (it did not), Plaintiff has no evidence that Bankroll ever sent any other fax advertisements to anyone else. Simply put, Plaintiff has no evidence as to numerosity to warrant continuing class certification. *See Miri v. Clinton*, 300 F.R.D. 319, 321-22 (E.D. Mich. 2014) (granting motion to decertify on the basis that numerosity was not satisfied).

Discovery is closed. While Bankroll denies that it sent the Purported Fax to Plaintiff, the only individual Plaintiff has identified that allegedly received the Purported Fax, or any other alleged fax offering a loan or line of credit from Bankroll, is Plaintiff itself, which is insufficient to meet its evidentiary burden to justify continuing class certification.

### (ii) Rule 23(a)(2) and 23(a)(3): Decertification is warranted as Plaintiff has no evidence of commonality or typicality.

To satisfy the commonality requirement of Rule 23(a)(2), a plaintiff's "'claims must depend upon a common contention … that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 338. Likewise, the typicality requirement of Rule 23(a)(3) requires that Plaintiff's claims be typical of the claims or defenses of the class. "These requirements are 'interrelated' and 'tend to merge.'" *Dixon v. Jefferson Cap. Sys., LLC*, No. 1:19-cv-02457, 2021 U.S. Dist. LEXIS 238563, *26 (S.D. Ind. Dec. 14, 2021), *quoting Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982).

But where, like here, numerosity is not satisfied as the plaintiff cannot identify any other persons or entities besides itself in the class, commonality and typicality fail as a matter of law. *Dixon*, 2021 U.S. Dist. LEXIS 238563 at *27. Because Plaintiff has not identified *anyone* other

8

than itself that received the Purported Fax, or any other allegedly unsolicited advertisement from Bankroll, Plaintiff necessarily cannot demonstrate that there is any type of common evidence that could resolve claims "in one stroke" on a common basis. Indeed, Plaintiff cannot even establish that it received the Purported Fax from Bankroll, and its own phone records do not show any fax transmission from anyone (let alone Bankroll) on the date alleged. (Ex. 1 pp. 31:3-16, 38:7-19 39:7-23, 46:17-24, 54:7-55:2, 51:6-52:21.)

As Plaintiff cannot satisfy the threshold requirements of Rule 23(a), decertification is warranted, and the Court need not even address the remaining requirements of Rule 23(b). *See, e.g.*, Dixon, 2021 U.S. Dist. LEXIS 238563 at *30. Regardless, Bankroll will briefly address them as well.

### E. THE RULE 23(b)(2) REQUIREMENTS ARE NOT SATISFIED

Plaintiff moved for class certification under Rule 23(b)(2) (injunctive relief class) and Rule 23(b)(3) (monetary damages class). Rule 23(b)(2) provides that a class action may be certified if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

> A class action under Rule 23(b)(2) is referred to as a "mandatory" class action because class members do not have an automatic right to notice or a right to opt out of the class. The defining character of a mandatory class is the 'homogeneity of the interests of the members of the class.' Because homogeneity is required, unitary adjudication of the claims is feasible without the devices of notice and opt-out. On the other hand, where individualized determinations are necessary, the homogeneity needed to protect the interests of absent class members is lacking.

*Romberio v. Unumprovident Corp.*, 385 Fed. Appx. 423, 432-33 (6th Cir. 2009); *see also Coleman v. General Motors Acceptance Corp.*, 296 F.3d 443, 447 (6th Cir. 2002).

Because of these requirements and the inability to opt out, "the Supreme Court has repeatedly expressed concern over the constitutionality of certifying a mandatory class that

9

includes claims for money damages." *Coleman*, 296 F.3d at 447; *see, e.g.*, *Dukes*, 564 U.S. at 363 ("In the context of a class action predominately for money damages we have held that absence of notice and opt-out violates due process."). Thus, while not outright prohibited, "close scrutiny is necessary if monetary damages are to be included in any mandatory class action to protect the individual interests at stake and ensure that the underlying assumption of homogeneity is not undermined." *Coleman*, 296 F.3d at 448.

Class certification under Rule 23(b)(2) is inappropriate when monetary damages predominate over, and are not merely incidental to, the injunctive relief sought.

> Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damage.

*Dukes*, 564 U.S. at 360-61 (emphasis in original); *e.g.*, *Davis v. Cintas Corp.*, 717 F.3d 476, 485-86, 489-91 (6th Cir. 2013) (affirming denial of class certification on the grounds that monetary relief was not merely "incidental" to injunctive relief and required individualized determination).

However, as Plaintiff's primary relief sought is monetary in the form of statutory damages, Rule 23(b)(2) certification is essentially improper by default. *See, e.g.*, *McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 179 (S.D. Cal. 2019) ("A TCPA plaintiff who seeks an award of statutory damages for each alleged TCPA violation is primarily interested in monetary damages. … [and] their claims are 'ineligible for Rule 23(b)(2) certification, regardless of Plaintiffs' parallel request for injunctive relief.'") (alteration added).

### F. THE RULE 23(b)(3) REQUIREMENTS ARE NOT SATISFIED

Rule 23(b)(3) requires Plaintiff to prove that "questions of law or fact predominate over any questions affecting only individual members." The predominance standard of Rule 23(b)(3)

10

parallels the commonality requirement of Rule 23(a)(2), but "contains the more stringent requirement that common issues 'predominate' over individual issues." *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 294 (N.D. Ohio 2007); *e.g.*, *Amchem Prods. v. Windsor*, 521 U.S. 591, 623-24 (1997) ("Even if Rule 23(a)'s commonality requirement may be satisfied … the predominance criterion is far more demanding.")

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352-53 (6th Cir. 2011). This determination entails examining what type of evidence will be presented by the parties to prove the required elements of the named plaintiff and putative class members' claims. *See Grubb*, 2015 U.S. Dist. LEXIS 111683 at *2.

There are at least three reasons why predominance is not satisfied in this case. First, by virtue of the fact that Plaintiff cannot satisfy the Rule 23(a) elements, and particularly commonality, the "more stringent" predominance likewise cannot be satisfied as a matter of law. *See, e.g.*, *id*. This is true not only for issues such as whether Bankroll sent any other faxes in the first place, but also subsumes related issues of an alleged lack of consent. *See Palmer v. Kci United States*, No. 4:19-CV-3084, 2020 U.S. Dist. LEXIS 227662, *3 (D. Kan. Dec. 4, 2020) (noting that in TCPA actions "[t]here is some question as to whether the issue of consent is even generally amenable to determination in a class action").

Second, even if there were other allegedly unsolicited faxes, a predominating individualized issue is whether any such faxes were received on a regulated telephone facsimile machine (that is subject to the TCPA) or were received by an online fax service (not subject to the TCPA). In order for any individual to have a claim under the applicable provision of the TCPA, it

11

is not enough to prove that a defendant sent a fax, but a plaintiff must also prove that the transmission was sent "to a telephone facsimile machine" ("**TFM**"). 47 U.S.C. § 227(b)(1)(C). A TFM is defined as "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3).

On December 9, 2019, the Federal Communications Commission ("**FCC**"), which has jurisdiction over the TCPA,[1] held in a declaratory ruling that an online fax service is not a TFM under the TCPA. *In the Matter of Amerifactors Fin. Grp., LLC*, 34 FCC Rcd 11950 (2019) ("***Amerifactors***"). As the FCC concluded:

> [A] fax received by an online fax service as an electronic message is effectively an email. … Faxes sent to online fax services via an attachment that the consumer can delete without printing are effectively the same as "email sent over the Internet." Consumers can manage those messages the same way they manage email by blocking senders or deleting incoming messages without printing them. We also understand that an online fax service cannot itself print a fax--the user of an online fax service must connect his or her own equipment in order to do so. As such, an online fax service is plainly not "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." Accordingly, under the plain terms of the Act, an online fax service is not a "telephone facsimile machine" and a fax sent to one is not "an unsolicited facsimile advertisement" prohibited by the TCPA.

*Id.* at ¶ 11.

Notably, Plaintiff itself is no longer using a TFM and, since the receipt of the Purported Fax in this case, has switched over to using an "email fax" to receive transmissions. (Ex. 1 pp. 21:16-21, 64:7-65:13.) Given the convenience offered by modern online fax services and progression of time and technology, even Plaintiff agrees that the general trend is moving away from TFM to online fax services. (Ex. 1 pg. 66:6-8.)

Since the FCC's decision in *Amerifactors*, courts across the country have routinely either denied class certification and/or decertified fax cases, "conclud[ing] that it is impossible to

---

[1] 47 U.S.C. § 227(b)(2).

determine on a class-wide basis whether recipients received the fax on a standalone fax machine." *Jeffrey Katz Chiropratic, Inc. v. Diamond Respiratory Care, Inc.*, No. 20-cv-04108, 2021 U.S. Dist. LEXIS 236314, *11-15 (Dec. 9, 2021) (collecting cases); *see, e.g.*, *True Health Chiropractic Inc. v. McKesson Corp.*, No. 13-cv-02219, 2021 U.S. Dist. LEXIS 199266, *8-11 (N.D. Cal. Oct. 15, 2021) (decertifying fax class action as a result of *Amerifactors*).

Finally, and related to the above, decertification is warranted based on the Supreme Court's recent decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), in which the Supreme Court held that it is not enough to prove a technical violation of the statute as to class members, but that "[e]very class member must have Article III standing in order to recover individual damages." *Id.* at 2208. That is, Plaintiff must prove that each individual class member suffered an injury in fact (whether actual receipt of the fax on a TFM, harm through used paper/toner, etc.) to establish concrete harm, as a result of any allegedly unsolicited fax advertisement. This lack of harm is particularly acute with any online fax services, as the FCC explained in *Amerifactors*.

> What is more, we agree with commenters that faxes sent to online fax services do not cause the specific harms to consumers Congress sought to address in the TCPA. The House Report on the TCPA makes clear that the facsimile provisions of the statute were intended to curb two specific harms: "First, [a fax advertisement] shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." The record is clear that faxes sent to online fax services do not pose these harms and, in fact give consumers tools such as blocking capabilities to control these costs. … [T]he use of a recipient's paper and ink, is not a factor with online fax services. …
>
> By contrast, the record here confirms that online fax services hold inbound faxes in digital form on a cloud-based server, where the user accesses the document via the online portal or via an email attachment and has the option to view, delete, or print them as desired. Faxes sent to online fax services use paper and ink only when the recipient *chooses to* print it using their own separately provided equipment. Neither is Congress' concern about junk faxes occupying the recipient's fax machine so it is unavailable for other transmissions an issue with online fax services. … In short, online fax services differ in critical ways from the traditional faxes sent to telephone facsimile machines Congress addressed in the TCPA.

*Amerifactors* at ¶¶ 12-13 (emphasis in original).

The issue of actual injury, however, is not limited to online faxes, but, as established by *Ramirez*, must be proven for all class members; that is, Plaintiff must offer proof that each and every recipient incurred an actual injury, whether through a specific fax using a recipient's "paper and ink," tying up a recipient's phone line "so it is unavailable for other transmissions," etc.

Again, even if Bankroll did send Plaintiff the Purported Fax (which it denies), Plaintiff has no evidence that anyone besides it ever received the Purported Fax or other similar unsolicited advertisement. Even then, Plaintiff cannot prove that common issues predominate. Instead, individualized inquiry inherently overwhelms. Any matter would devolve into individualized inquiries over whether, inter alia, individual recipients actually received any alleged faxes at issue, the nature and type of the fax service of the recipient, and whether any individual recipient in fact suffered actual and concrete harm.[2] Even if Plaintiff could identify anyone besides itself in the class (it cannot), issues like the above cannot be proven on a class-wide basis using "generalized proof" applicable to the class as a whole, but can be established by "only individualized proof," warranting decertification. *See Randleman*, 646 F.3d at 352-53.

### III. CONCLUSION

For all of these reasons, Bankroll's Motion should be granted.

---

[2] By virtue of the fact that predominance is not satisfied, superiority is likewise not satisfied. *See, e.g.*, *Diamond Respiratory Care, Inc.*, 2021 U.S. Dist. LEXIS 236314 at *8.

Respectfully submitted,


*/s/ David M. Krueger*
DAVID M. KRUEGER (0085072)
JOHN N. DAGON (0098128)
**BENESCH, FRIEDLANDER, COPLAN &**
  **ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone: 216.363.4500
Facsimile: 216.363.4588
Email: dkrueger@beneschlaw.com
       jdagon@beneschlaw.com

*Attorneys for Defendant Bankroll Capital, Inc.*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2022 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

*/s/ David M. Krueger*
DAVID M. KRUEGER
*One of the attorneys for Defendant Bankroll Capital, Inc.*
