IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT, OHIO
EASTERN DIVISION

| | |
|---|---|
| RIVER CHIROPRACTIC AND WELLNESS CENTER, LLC, | ) CASE NO. 1:20-cv-00688 ) |
| Plaintiff, | ) JUDGE DONALD C. NUGENT ) ) |
| -vs- | ) ) |
| BANKROLL CAPITAL, INC. | ) **MOTION TO AMEND COMPLAINT** ) **AND ADD NEW PARTY** ) **DEFENDANTS** |
| Defendant. | ) |

NOW COMES **Plaintiff River Chiropractic and Wellness Center, LLC**, by and through the undersigned counsel, and pursuant to Civ.R. 15 & 19, hereby moves for leave to amend its class action complaint against Bankroll Capital, Inc. ("Bankroll") to add Narin Charanvattanakit aka Narin Charan ("Mr. Charan"), Christina Duncan aka Christina Gonzales ("Ms. Duncan"), and John Does 1-10, inclusive.

**I.    CASE BACKGROUND**

The case has been the subject of substantial, but still incomplete discovery, which only began after proposed New Party Defendant Narin Charanvattanakit aka Narin Charan insisted on disclaiming liability by interacting with undersigned counsel and wasting the Court and counsel's time in obtaining a default judgment and class certification, only to hire counsel after the fact.

From the inception of the case, Plaintiff believed and still believes that Bankroll sent an unsolicited fax to its fax machine. Indeed, undersigned counsel called the "local" 440 number on the fax and asked for "Josh," which rang to a number answered by a woman named Jennie Li who sent undersigned an email from Bankroll and asked undersigned to provide more information. *See* Ex. 1, Affidavit of Michael Berler, ¶¶7-8. To this day, Bankroll calls undersigned counsel's

1

cellphone repeatedly, leaving voicemail messages and sends emails on a weekly basis (Id., ¶¶10-11), this despite the fact that Bankroll claims there is no evidence that fax came from it.

It now appears that other persons or entities, who own, control, manage or work for or in conjunction with Bankroll are responsible for the fax sent, which means that Plaintiff may have named the wrong party and/or omitted several critical parties. The only name on the fax sent to River Chiro was "Ohio Business Loans," an entity which does not appear to exist. Thus, the fax may have been sent by any number of broadcast fax/internet fax companies on behalf of any number of real or made-up names. **However, the call made to the 440-number listed rang through to the 949-number of a Bankroll Employee in California**, whose email response to undersigned's phone call read as follows:

  **From: Jennie LI** jennle@bankroll.lo
 **Subject:** Verification for Michael
   **Date:** Azar 26, 1398 AP at 17:04
    **To:** mlb@berler.net

     Hi Michael,

     Thank you for the opportunity to provide funding for your business. For your protection, we need to verify your identity. To complete this step, please click here.

     The above link will expire in 24 hours.

     Jennie Li

     **Loan Specialist**
     **Jennie@bankroll.io**
     **(949) 799-3507**

[Emphasis Added] *See* Ex. 1, Affidavit of Michael Berler, Ex. C, Email from Jennie Li to Michael Berler

Moreover, several weeks later "Jennie Li" contacted undersigned several times to see if the verification had been filled out. *Id.*, Ex. D, Text Messages from Jennie Li. Several years

later, Bankroll is still calling, texting, and sending emails, such as the one in Exhibit E, Email from Kate Anderson of Bankroll. *Id.* Nonetheless, the discovery turned over thus far, from this Defendant, in the way of fax logs does not reveal how River Chiro's "immaculate" fax came to be emitted from Plaintiff's fax machine.

Bankroll in its Motion for Summary Judgment states that there is no proof the fax was sent by Bankroll, and that Bankroll did not start doing business until September 2018, changing its name from Theodore & Cash. Bankroll claims that Theodore & Cash was not actively in business before that (*See* Dkt. 32 Motion for Summary Judgment, Ex. 4, ¶¶2-5), after Plaintiff claims to have received the fax. In effect, Defendant claims that either the fax was never received as claimed ***or that Plaintiff has named the wrong party.***

Moreover, it is apparent from an earlier case filed against Narin Charanvattanakit aka Narin Charan ("Mr. Charan") and his then corporate entity, *Bee Denning d/b/a Practice Performance Group and Gregory Chick v. Capital Alliance Group and Narin Charanvattanakit*, 3:13-cv-02654-BAS-WVG (S.D. Cal, November 5, 2013), that Mr. Charan has a pocket full of corporations and company names (*See Subsection A infra.*). What is evident is that all these entities have one thing in common Mr. Charan. Unless River Chiro is allowed to add him and other related entities to his lawsuit, discovery will be fruitless, as Plaintiff does not know which incarnation of Mr. Charan's businesses sent them the fax. Moreover, depositions of Mr. Charan and Ms. Duncan are necessary to decipher their complex web of companies and contractors.

**A. <u>Narin Charan and the Entities He Owns And/or Controls Have a History of Operating Under a Number of Corporate Names and Aliases</u>**

This is not Mr. Charan's first dalliance with lawsuits or the legal authorities, nor his first attempt to evade liability. Mr. Charan is the barker in a large carnival of changing corporate

entices, pseudonyms, and technology providers which obscure, complicate, and insolate him from liability.

Perhaps the most notable of Defendant and New Party Defendants exploits were outlined in the *Denning* Class Action suit against Mr. Charan and his progeny. Here, **in a case where class certification was granted**, Plaintiffs alleged that: "Defendants tried to **disguise their unlawful conduct** by **using various aliases and call-forwarding technology** to make it appear **as if the solicitations were coming from different companies** . . .[1]" [Emphasis Added] *See,* Exhibit 2, *Denning*, Plaintiffs' Motion for Class Certification (September 5, 2014), p. 8).

Significantly, the Order Granting Motion for Final Approval of Class Action Settlement (Ex. 3) in *Denning* required that Mr. Charan and his then junk fax/robocall company Capital Alliance Group:

> 9. All fax transmissions that include "unsolicited advertisements" as defined in 47 U.S.C. §§ 227(a)(4) must be preceded by the receipt of the express written permission of the intended recipient, including the intended recipient's signature.
>
> 10. Defendants and Defendants' successors must maintain records demonstrating that recipients have provided such express permission to send fax advertisements.

It is clear from the fax sent to River Chiro and Plaintiff's assertions, that River Chiro neither expected, nor gave its permission for Bankroll and/or any other associated entities to send an

---

[1] . . . All [Plaintiffs] received multiple faxes advertising business loans . . . Although the faxes purported to have been sent by different companies, the faxes the business owners received were nearly identical, with similar formatting, style, logo design, and text. Minto Decl. ¶¶ 5– 6, Exs. 1– 2 (indicating faxes were received from "Prompt," "Snap Business Loans," and "Nextday Business Loans"); Kaufman Decl. ¶¶ 5–24, Exs. 1–5 (indicating faxes received from "Bank Capital," "Simple Business Funding," "Community Business Funding," "Prompt," "FundQuick," "3 Day Loans," "Snap Business Funding," "Nextday Business Loans," and "Zoom Capital"); Doud Decl. ¶¶ 5–10, Ex. 1–6 (indicating faxes received from "Bank Capital," "Fast, Working Capital," "Community Business Funding," "Zoom Capital," "3DayLoans," and "Snap Business Loans"); Mitchell Decl. ¶¶ 5–14, Exs. 1–4 (indicating faxes received from "FundQuick," "Snap," "Snap Business Loans," and "NextDay Business Loans"); Griffey Decl. ¶¶ 5–7, Ex.1 (indicating fax received from "Nextday Business Loans"). *Id*, Exhibit 2., p. 13

unsolicited fax hawking business loans. Thus, if the faxes Defendant sent to California telephone numbers, had the same defect, then it has violated the court's order by simply slapping another name on its illegal operations. *See Ex. 4*, Defendant's Responses to Plaintiff's 2nd Set of Discovery Requests (Bates Nos. BANKROLL000064 – 281).

This was not first time Defendants have violated a court order or obfuscated its illegal actions with shifting corporate entities and methodologies. In the *Denning* Motion for Class Certification, Plaintiffs informed the court that:

> **Defendants' Unlawful Activities Have Continued Even After the Indiana Attorney General Caught Them**
>
> In March 2013, the Indiana Attorney General sued Capital Alliance and Narin for violating Indiana's state law prohibiting unsolicited junk faxes. Ex. 13. The complaint alleged that Capital Alliance used the aliases BankCapital, BankCapital Direct, and Trusted Bankcorp and Narin used the alias "Clayton Heath" to perpetuate their unlawful marketing scheme. *Id.* ¶ 3. Capital Alliance and Narin settled the Indiana lawsuit in August 2013. . . [and] agreed to the entry of a consent decree requiring Capital Alliance to cease soliciting clients in Indiana. Defendants also agreed to pay $40,000. Ex. 1 (Narin Dep.), Ex. 4.
>
> Defendant Narin testified that Capital Alliance stopped sending junk faxes after the Indiana consent decree was entered in August 2013. Ex. 1 (Narin Dep.) at 66:1–67:8. The evidence indicates otherwise. Ms. Duncan testified on August 4, 2014 that Capital Alliance continues to solicit customers by sending junk faxes. Ex. 3 (Duncan Dep.) at 14:18–25; 19:24–20:1. In addition, Class members received unsolicited junk faxes as recently as this summer. . . . records reveals that . . .Capital Alliance has sent junk faxes to at least 450,000 Class members. Hoover Decl. ¶ 27. There is simply no doubt that Capital Alliance continues to use junk faxes to solicit business.

*See* Ex. 2, *Denning* MFC, pp.16-17.

Finally, last year, California's Business, Consumer Services and Housing Agency, Department of Financial Protection and Innovation issued a Desist and Refrain Order against Bankroll:

> Bankroll Capital, Inc.
> Narin Charanvattankit, also known as
> Narin Charan, [CEO] and Director 500 Technology Drive, Suite 490
> Irvine, California 92618
>
> **DESIST AND REFRAIN ORDER**
> **(For violations of Financial Code section 22100)**
>
> The Commissioner of Financial Protection and Innovation (Commissioner) finds that:
>
> \*\*\*
>
> 2.    At all relevant times, Narin Charanvattankit, also known as Narin Charan (Charanvattankit) . . . is the [CEO] and Director of Bankroll.
>
> 4    Beginning in at least 2019, Bankroll and Charanvattankit engaged in the business of a finance lender . . . by offering commercial loans on its website that claimed . . . over 10,000 businesses had been "served" with over "2 billion" in "funds delivered." . . .
>
> \*\*\*
>
> 6. The Better Business Bureau. . . received complaints from customers claiming Bankroll . . . failed to loan them money as promised [and] baited them with low-interest teaser rates . . . then only offered loans at significantly higher rates . . .
>
> 7. The Commissioner finds that the products offered by Bankroll and Charanvattankit . . . constitute loans under . . . Fin. Code, § 22000 et seq.
>
> 8. Neither Bankroll nor Charanvattankit have been issued a license by the Commissioner authorizing them to engage in the business of a finance lender . . .
>
> . . . **the Commissioner is of the opinion that Bankroll Capital, Inc. and Narin Charanvattankit, also known as Narin Charan**, have engaged in the business of a finance lender and/or broker without having first obtained a license from the Commissioner in violation of Financial Code section 22100. . . [and] are ordered to desist and refrain from engaging in the business of a finance lender. . . [Emphasis Added]. *See* Ex. 5, Cease and Refrain Order, March 25, 2021.

It is clear that the State of California felt it necessary to name Mr. Charan personally, even though it named Bankroll in its Desist and Refrain order, for the same reasons as Plaintiff seeks to

add him and his sundry associates in this motion. Mr. Charan's dishonesty and lack of respect for the law and the courts is manifest and underlies his evasive behavior in this case.

### B. Narin Charan and Christina Duncan, and/or John Does 1-10, Own, Control and/or Manage Bankroll and its Associated Entities

Ultimately, Mr. Charan is at the center of his own universe and exercises control over a multitude and entities, real and imagined and by necessity, he and his alter egos should be parties to this lawsuit. So too should Christina Duncan, who upon information and belief is an owner, and who manages and directs key activities and has knowledge central to this lawsuit.

Both Mr. Charan and Ms. Duncan run their junk fax loan business under whatever name they happen to operate under at the time. In *Benning*, the following was discovered in depositions:

> Defendant Narin is heavily involved in Capital Alliance's operations, including its junk fax and telemarketing activities. The CEO of Capital Alliance, Narin manages daily operations, directs sales activities and motivates Capital Alliance's employees. Ex. 1 (Narin Dep.) at 12:19 – 20:3, 15:6–7. Narin's personal involvement extends to Capital Alliance's use of junk faxing . . . to solicit new business. Indeed, **according to Capital Alliance Operations Manager Christina Duncan, Narin is the person at Capital Alliance who knows the details regarding Capital Alliance's junk fax and telemarketing efforts.** *See* Ex. 3 at 19:2–11 (testifying that Narin probably would know who the company uses for fax marketing), 20:2–5 (testifying that Narin would be the person who had the final say over whether or not to use faxes as a marketing tool).
>
> . . . He hired Absolute Fax and communicated with it regarding their relationship and payment instructions. Ex. 1 (Narin Dep.) at 38:6– 39:6. He personally instructed Absolute Fax to generate leads for Capital Alliance. . . he personally investigated whether Absolute Fax complied with the law. *Id.* at 43:13 – 44:15. [Emphasis Added]

*See* Ex. 2 MFC, p. 10-11

It would appear that Mr. Charan and Ms. Duncan have a long history of operating an identical business model under shifting entities, which are designed to elude liability and prosecution, and that they are the driving force behind these entities whose mere paper identities are eclipsed by the deep tangible and human foundations created by them.

At end, Defendant has acted to delay proceedings and prevent Plaintiff from accessing discoverable information to impede its ability to prosecute its case. As part of Defendants' hide-the-ball strategy, Defendant has given evasive discovery responses hiding behind a facade of corporate structure without disclosing the full nature of this structure and the relationships between defendants and potential defendants.

After a year of litigation, discussion among counsel to discuss discovery issues, and the passage of the Court's discovery deadline, Defendants indicated for the first time in their Motion for Summary Judgment that Bankroll was not in business when River Chiro received the fax. (*See* Dkt. 32 Motion for Summary Judgment, p. 1). However, the name Bankroll appears on many documents sent to counsel prior to litigation in response to a call to the number on the fax received by River Chiro. As a result, Plaintiff still believes that Bankroll was properly named and continues to be a proper defendant.

Nonetheless, because it appears that Narin Charan, Christina Duncan, and host of other entities should be named as defendants in this matter and because they have avoided producing documents based on them not being named as Defendants, justice demands that Plaintiff be granted leave to amend to add these persons and entities as New Party Defendants.

**II. LAW AND ANALYSIS**

Civ.R. 15(A) provides:

> …a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires.

Civ. R. 19 provides that a party shall be joined if "in his absence complete relief cannot be accorded among those already parties."

In considering a motion to amend, a trial court should be guided by two concepts, "(1) leave to file an amended complaint should be freely given when 'justice so requires,' and (2) the Ohio Supreme Court's admonition that cases should be decided on their merits when possible, rather than pleading technicalities." *Merchants Natl. Bank v. Overstake*, 2012-Ohio6309, ¶¶17-23 (4th Dist. 2012), *citing State ex rel. Montgomery v. R & D Chem. Co*., 72 Ohio St.3d 202, 204 (1995). Furthermore, Civ.R. 15(A) allows amendments to clarify claims made. *Jordan v. Cuyahoga Metro. Hous. Auth*., 161 Ohio App.3d 216, (8th Dist. 2005).

The Ohio Supreme Court has reiterated that leave to amend pleadings "shall be freely granted" unless there is a showing of bad faith, undelay delay, or undue prejudice. *Turner v. Cent. Local School Dist*., 85 Ohio St.3d 95, 99 (1999).

In the present case, the evidence points to the fact that Mr. Charan and Ms. Duncan over their long history together, have operated numerous entities which pitched business loans across the country by fax and phone, in violation of the Telephone Consumer Protection Act. There is a paper-thin boundary between them and their corporate entities and alias. Without their addition as parties, they will escape liability simply because Plaintiff named the wrong entity at the wrong time, while Defendants were busy "changing the signage."

Moreover, no bad faith, undue delay, or undue prejudice exists. As set forth herein, discovery thus far has been evasive and is incomplete, and Defendant waited until the eleventh hour to reveal that it changed operating entities at the convenient moment. Thus, any delay in

9

filing this motion is not "undue." It was not caused by Plaintiff but by Defendant(s). Accordingly, Defendants cannot clam prejudice, because they themselves have caused any potential negative impact related to timing. Therefore, the proposed amendment is appropriate and timely.

### III.  CONCLUSION

Based on the foregoing, justice demands that this Court allow Plaintiff to amend its pleading to add essential parties, and no reason exists to deny this request.

WHEREFORE, Plaintiff moves this Court to allow it to amend its pleading per the proposed amendment attached hereto as Ex. 6.

> Respectfully submitted,
>
> */s/Ronald I. Frederick*
> Ronald I. Frederick (#0063609)
> Michael L. Berler (#0085728)
> Michael L. Fine (#0077131)
> Frederick & Berler LLC
> 767 East 185th Street
> Cleveland, Ohio 44119
> (216) 502-1055 (phone)
> (216) 566-9400(fax)
> ronf@clevelandconsumerlaw.com
> mikeb@clevelandconsumerlaw.com
> michaelf@clevelandconsumerlaw.com
> *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of February 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. Additionally, a copy of the foregoing has been sent via electronic mail to the following party:

David M. Krueger, Esq.
John N. Dagon, Esq.
Benesch, Friedlander, Coplan & Aronoff, LLP
dkrueger@beneschlaw.com
jdagon@beneschlaw.com
*Counsel for Defendant Bankroll Capital, Inc.*

                                          */s/Ronald I. Frederick*
                                          Ronald I. Frederick (#0063609)
                                          Frederick & Berler LLC
                                          *One of the Attorneys for Plaintiff*